Citation Nr: 1755126 
Decision Date: 11/07/17 Archive Date: 12/07/17

DOCKET NO. 08-35 733 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in San Diego, California


THE ISSUES

1. Entitlement to an effective date prior to November 17, 2011 for the grant of service connection for right lower extremity radiculopathy associated with the low back disability.

2. Entitlement to an effective date prior to November 17, 2011 for the grant of service connection for left lower extremity radiculopathy associated with the low back disability.

3. Entitlement to a compensable rating for left lower extremity radiculopathy prior to November 17, 2011.

4. Entitlement to service connection for peripheral neuropathy of the left upper extremity.

5. Entitlement to service connection for peripheral neuropathy of the right upper extremity.

6. Entitlement to service connection for peripheral neuropathy of the left lower extremity.

7. Entitlement to service connection for peripheral neuropathy of the right lower extremity.

8. Entitlement to compensation for total disability based on individual unemployability (TDIU) prior to April 1, 2013.

9. Entitlement special monthly compensation (SMC) under 38 U.S.C. § 1114(s) prior to April 1, 2013.


REPRESENTATION

Appellant represented by: Daniel Smith, Attorney at law


WITNESSES AT HEARING ON APPEAL

Appellant, spouse


ATTORNEY FOR THE BOARD

A.P. Armstrong, Associate Counsel


INTRODUCTION

The Veteran served on active duty from November 1967 to November 1970. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from August 2005, August 2008, and September 2013 rating decisions issued by the Department of Veterans Affairs (VA) Regional Office (RO). The Board previously considered these claims in September 2015. 

The Veteran and his wife testified about his neuropathy claim in August 2006. The Veterans Law Judge who held that hearing no longer works for the Board but a transcript of the hearing is of record. 

The issues of entitlement to service connection for peripheral neuropathy and compensation for TDIU and SMC prior to April 1, 2013 are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. There is no objective, diagnostic evidence of right lower extremity radiculopathy prior to November 17, 2011.

2. The evidence shows mild left lower extremity radiculopathy beginning May 4, 2004 but not moderate, moderately-severe, or severe symptoms.


CONCLUSIONS OF LAW

1. The criteria for an award of service connection for right lower extremity radiculopathy prior to November 17, 2011 have not been met. 38 U.S.C.A. §§ 1110, 1155 (West 2014); 38 C.F.R. §§ 3.321, 3.400, 4.3, 4.7, 4.71a (2017).

2. The criteria for an effective date of May 4, 2004 and a 10 percent rating, but not higher, for left lower extremity radiculopathy have been met. 38 U.S.C.A. §§ 1110, 1155 (West 2014); 38 C.F.R. §§ 3.321, 3.400, 4.3, 4.7, 4.71a, 4.124a, Diagnostic Code 8520 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Procedural duties

VA is required to provide claimants with notice and assistance in substantiating a claim. See 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2016). The RO sent the Veteran notice letters in March 2004 and December 2011.

Next, VA has a duty to assist the Veteran in the development of claim. This duty includes assisting him in the procurement of pertinent treatment records and providing an examination when necessary. 38 C.F.R. § 3.159.

All identified, available medical records have been obtained and considered. VA provided spine and neurologic examinations in April 2008, April 2010, January 2012, and June 2013 and medical opinions in October 2015 and October 2017. The AOJ substantially complied with the Board's remand directives by obtaining the 2015 and 2017 medical opinions. See D'Aries v. Peake, 22 Vet. App. 97, 106 (2008); Stegall v. West, 11 Vet. App. 268, 271 (1998). 

As such, the Board will proceed to the merits of the appeal.

II. Effective date

The Veteran contends that he should be granted service connection for radiculopathy effective October 22, 2004, because the evidence shows he suffered from radiculopathy back that far.

Generally, the effective date for the grant of service connection is the day following separation from active service or the date entitlement arose, if the claim is received within one year after discharge from service. Otherwise, for an award based on an original claim, a claim reopened after a final disallowance, or a claim for an increased rating, the effective date will be the date of receipt of the claim or the date entitlement arose, whichever is the later. 38 U.S.C.A. § 5110(a); 38 C.F.R. § 3.400.

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, all reasonable doubt will be resolved in favor of the claimant. 38 U.S.C.A. § 5107.

When rating a back disability, like the Veteran's, Note (1) to the General Rating Formula for the Spine directs that associated objective neurologic abnormalities be rated separately. 38 C.F.R. § 4.71a, DC 5237. Service connection for radiculopathy could be granted back to the date of the Veteran's claim for his back disability, if the evidence shows that he indeed had radiculopathy related to his back. The Veteran filed a claim for a back disability on February 23, 2004. The RO granted service connection for radiculopathy beginning November 17, 2011. As noted above, effective date is the later of the date of claim and the date entitlement arose. 38 C.F.R. § 3.400. To determine the date entitlement arose, the Board will consider at what point between February 23, 2004 and November 17, 2011 the Veteran developed radiculopathy associated with his back disability. 

After a review of the evidence, the Board finds that the criteria for an effective date for the grant of service connection for right lower extremity radiculopathy prior to November 17, 2011 have not been met but the criteria for an effective date of May 4, 2004 for service connection of left lower extremity radiculopathy have been met. See 38 C.F.R. §§ 3.400, 4.71a, DC 5237.

The preponderance of the evidence shows no objective findings of right lower extremity radiculopathy prior to November 17, 2011. Some treatment notes from 2003 discuss low back pain with sciatica. A December 2003 record shows that an EMG study was not possible on that day because the Veteran was experiencing too much pain. A treating provider in January 2004 noted that the tickling sensation and pain the Veteran reported were likely secondary to his severe peripheral neuropathy, as opposed to radiculopathy. A May 2004 MRI report shows left L5-S1 nerve involvement but no nerve involvement on the right side. Similarly, September 2004 and September 2005 records discuss left lumbar radiculopathy but not right. Notations of low back pain with sciatica occur again in 2005 and 2008. An EMG study conducted at the time of the April 2010 examination showed no evidence of lumbosacral radiculopathy. 

The Note to the General Rating Formula for the Spine specifically discusses objective neurologic abnormalities, meaning abnormalities diagnosed with objective medical findings. See 38 C.F.R. § 4.71a, DC 5237. Here, all diagnostic and EMG testing shows no radiculopathy in the right lower extremity. The treatment notes of sciatica could easily have been mischaracterizations of the peripheral neuropathy the Veteran experienced. The October 2015 examiner considered the possibility of an earlier onset of radiculopathy and explained that the ascending nature of the Veteran's neuropathy indicates that it had a peripheral cause instead of radiculopathy, which causes compression centrally and radiates to the lower extremities. The October 2017 examiner reasoned that clinical visits are helpful but not diagnostic. Given these opinions, the Board finds that diagnostic testing conducting during this period is the most probative evidence of radiculopathy. No diagnostic testing indicated that the Veteran had right lower extremity radiculopathy prior to November 17, 2011. Therefore, service connection is not appropriate prior to that date. See 38 C.F.R. §§ 3.400, 4.71a, DC 5237.

The evidence shows objective findings of left lower extremity radiculopathy beginning May 4, 2004. The October 2017 examiner identified the May 4, 2004 MRI as diagnostic evidence of left lower extremity radiculopathy when it showed left L5-S1 nerve involvement. A September 2005 treatment record also discusses MRI evidence of possible left radiculopathy of unclear significance. Additionally, current evidence shows left radiculopathy symptoms are more severe than right symptoms suggesting left radiculopathy began sooner and developed longer. The 2010 EMG was negative for radiculopathy on both sides. Nevertheless, the Board resolves doubt in the Veteran's favor and finds that he had objective radiculopathy in the left lower extremity evidenced by MRIs in May 2004 and September 2005. Service connection for left lower extremity radiculopathy is appropriate beginning May 4, 2004. See 38 C.F.R. §§ 3.400, 4.71a, DC 5237. This is considered a full grant of the benefit sought on appeal as the Veteran requested an effective date of October 22, 2004. 

III. Rating analysis

As discussed above, the rating code for back disabilities addresses associated neurologic abnormalities. When the RO first assigned a disability rating for the back, it effectively denied a separate rating for radiculopathy. The Veteran appealed that decision. The Board, therefore, has jurisdiction to consider the rating for the left lower extremity prior to November 17, 2011.

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities, found in 38 C.F.R., Part 4. The percentage ratings are based on the average impairment of earning capacity as a result of a service-connected disability, and separate diagnostic codes identify the various disabilities and the criteria for specific ratings. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1.

If two disability evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. All reasonable doubt as to the degree of disability will be resolved in favor of the claimant. 38 C.F.R. § 4.3. 

Diseases affecting the nerves are rated on the basis of degree of paralysis, neuritis, or neuralgia under 38 C.F.R. § 4.124a. Diagnostic Code 8520 applies to the sciatic nerve and allows for a 10 percent rating for mild incomplete paralysis, a 20 percent rating for moderate incomplete paralysis of the sciatic nerve, a 40 percent rating for moderately severe incomplete paralysis, and a 60 percent rating for severe incomplete paralysis with marked muscle atrophy. The maximum 80 percent rating is available for complete paralysis evidenced by the foot dangling and dropping, no possible active movement below the knee, and weakened or lost flexion of the knee. 38 C.F.R. § 4.124a, DC 8520. 

Based on the evidence, the Board finds that the criteria for a rating of 10 percent, but not higher, for left lower extremity radiculopathy have been met prior to November 17, 2011. See 38 C.F.R. § 4.124a, DC 8520. 

The evidence shows mild largely subjective symptoms prior to November 17, 2011. During treatment, the Veteran reported sciatica, or pain, in his left lower extremity. At the April 2010 examination, he noted that pain radiated to his left leg to the knee. The EMG study was negative for signs of radiculopathy. The Veteran had significant impairment from lower extremity peripheral neuropathy, but the preponderance of the evidence shows that his radiculopathy was not the cause of those symptoms. Specifically, the April 2008 examiner opined that the Veteran's limp appeared to be due to the stated neuropathy as opposed to the lower back. A January 2004 provider noted that the tickling sensation and pain were likely secondary to his severe peripheral neuropathy. Additionally, he had similar symptoms in both legs and arms but evidence shows radiculopathy only affecting his left leg during this period. The introduction to the rating schedule of the nerves directs that involvement that is wholly sensory, should be rated at the mild, or at most, moderate degree. See 38 C.F.R. § 4.124a, DC 8520. Here, the radiculopathy involvement is not only wholly sensory, it is so slight that it could not be detected on EMG study and examiners failed to diagnose it. There is no evidence that radiculopathy caused moderate or severe symptoms such as loss of reflexes, muscle weakness, or loss of sensation. As such, a rating in excess of 10 percent for left lower extremity radiculopathy is not appropriate. See 38 C.F.R. § 4.124a, DC 8520. 

The effects of peripheral neuropathy will be considered if the Veteran's service-connection claim is successful. 

All possibly applicable diagnostic codes have been considered in compliance with Schafrath v. Derwinski, 1 Vet. App. 589 (1991), but the Veteran could not receive a higher rating for his radiculopathy during this period based on the evidence. See 38 C.F.R. §§ 4.71a, 4.124a. Staged ratings are not appropriate because the symptoms were generally consistent during the period on appeal. See Fenderson v. Brown, 12 Vet. App. 119, 126-127 (1999). 




 (CONTINUED ON NEXT PAGE)

ORDER

An effective date prior to November 17, 2011 for the grant of service connection for right lower extremity radiculopathy is denied.

An effective date of May 4, 2004 for left lower extremity radiculopathy is granted. 

A 10 percent disability rating, but not higher, for left lower extremity radiculopathy from May 4, 2004 to November 17, 2011 is granted.


REMAND

An addendum opinion is again needed for the Veteran's peripheral neuropathy claims. First, the November 2015 and February 2016 examiner opined that the peripheral neuropathy is less likely than not related to service because ascending neuropathy can be caused by Guillain-Barre syndrome, transverse myelitis, infection, or multiple sclerosis and there is no way to link these conditions to a specific military medical condition. The examiner did not, however, address the Veteran's presumed exposure to herbicide agents. An adequate medical opinion must address all raised theories of entitlement. Stefl v. Nicholson, 21 Vet. App. 120 (2007). 

The Veteran's DD 214 shows that he served in Vietnam from July 1968 to December 1969 and is presumed exposed to herbicide agents. See 38 C.F.R. § 3.307. He underwent numerous evaluations and testing for his peripheral neuropathy but the etiology remains unknown. A January 2008 provider wrote that peripheral neuropathy with autonomic component may fit the description of cIAP, which would most likely suggest etiology related to environmental toxin exposure. The etiology may be a combination of initial toxic exposure in the military and possible occupational exposure to an unclear array of paints, stains, and solvents. A note from August 2008 says to rule out myalgia as being secondary to altered nutrient disposition secondary to poor nutrient intake, pharmacologic effects, and toxic exposures. These notes provide hypothetical causes but are not conclusory. 

The July 2014 examiner opined that the Veteran's peripheral neuropathy was less likely than not caused by his service-connected back disability. On remand, the October 2015 examiner addressed the question of aggravation and found that his peripheral neuropathy was at least as likely as not aggravated by the service-connected back disability. The examiner explained that the degenerative disc disease causes pressure on the exiting nerve roots and increases the compression on the nerves, which leads to worsening of the neuropathy and increases the prior injury sustained by the nerve. The examiner was unable to provide a baseline level of disability prior to aggravation. The grant of service connection based on aggravation requires a finding of baseline level disability. 38 C.F.R. § 3.310(b). The evidence suggests that the Veteran's back disability did not begin to have nerve involvement until after the diagnosis of peripheral neuropathy. The Board requests that an examiner attempt to provide a baseline level of disability prior to aggravation by the back.

The Veteran's peripheral neuropathy claim began prior to April 1, 2013. The outcome of that claim may affect the Veteran's entitlement to compensation for TDIU and special monthly compensation prior to that date. Accordingly, those appeals are also remanded.

Accordingly, the case is REMANDED for the following action:

1. Request a medical opinion on the Veteran's neuropathy claim from the October 2015 examiner, or another examiner if that examiner is unavailable. The examiner should review the claims file to become familiar with the Veteran's pertinent medical history and address the following:

a. Is the Veteran's peripheral neuropathy at least as likely as not related to his presumed exposure to herbicide agents?

Consider all lay and medical evidence, including January and August 2008 treatment notes discussing toxins as a potential cause of the neuropathy and the Veteran's and his wife's reports of symptoms dating back to his 30s and 40s. Assume the Veteran was exposed to herbicide agents in Vietnam. 

b. The October 2015 opinion states that the peripheral neuropathy was at least as likely as not aggravated by the service-connected back disability. Please identify which of the four extremities was aggravated and provide a baseline level of disability prior to aggravation. If unable to provide a baseline level of disability, please identify a date on which the back disability began to have effects on the nerves.

All opinions must be supported by a comprehensive rationale. If the opinion cannot be provided without resort to speculation, the examiner should explain why, and state whether the inability is due to the absence of evidence or limits of scientific/medical knowledge.

2. If any issue on appeal remains denied, furnish the Veteran and his representative a supplemental statement of the case. Then, return the case to the Board, if otherwise in order.

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
ERIC S. LEBOFF
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs